# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

REYNALDO AQUINO,

    Petitioner,

vs.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:11-cv-01587-JCM-NJK

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#5) and respondents' answer (#30). The court finds that petitioner is not entitled to relief, and the court denies the petition.

    After a jury trial in state district court, petitioner was convicted of conspiracy to commit robbery with the use of a deadly weapon, attempted robbery with the use of a deadly weapon, and attempted murder with the use of a deadly weapon. Ex. 30 (#18). Petitioner appealed. The Nevada Supreme Court reversed in part and remanded for the district court to enter an amended judgment of conviction for two reasons. First, the Nevada Supreme Court determined that imposition of the deadly-weapon enhancement of Nev. Rev. Stat. § 193.165 for the crime of conspiracy to commit robbery with the use of a deadly weapon was incorrect. Second, the Nevada Supreme Court wanted the district court to clarify how the sentences for the three counts ran concurrently and consecutively. Ex. 48, at 14-16 (#19). The Nevada Supreme Court affirmed on all other issues. The state district court entered an amended judgment of conviction in accordance with the Nevada Supreme Court's decision. Ex. 54 (#19).

Petitioner then filed in state district court a post-conviction habeas corpus petition. Ex. 56 (#19). The state district court denied the petition. Ex. 70 (#20). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 87 (#20).

Petitioner also filed in state district court a motion to modify and/or correct an illegal sentence. Ex. 62 (#20). The state district court denied the motion. Ex. 66 (#20). Petitioner appealed after the time to appeal had expired. The Nevada Supreme Court dismissed the appeal for that reason. Ex. 78 (#20).

Petitioner then commenced this action. Respondents filed a motion to dismiss (#16). The court determined that petitioner had not exhausted his state-court remedies for grounds 1(2) and 5. The court dismissed those grounds under 28 U.S.C. § 2254(b)(2) because they were without merit. The court dismissed ground 6 because it was procedurally defaulted. Reasonable jurists would not find the dismissal of these grounds to be debatable or wrong, and the court will not issue a certificate of appealability for these grounds.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

1  Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal
2  law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state
3  court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded
4  jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

Maximiliano Santa Cruz was driving north on Interstate 15 at night when he noticed a car following him. Petitioner was a passenger, and petitioner's co-defendant, Jesus Carrillo, was the driver. Santa Cruz exited the freeway. The other car followed and stopped next to Santa Cruz. Petitioner asked Santa Cruz if he was interested in selling his car. Santa Cruz declined and drove to the Little Darlings adult bookstore, which he reckoned was open with people around at that time of night. Carrillo and petitioner followed. Santa Cruz got out of his car and walked toward the bookstore. Petitioner got out of his car, approached Santa Cruz, and demanded the car keys. Santa Cruz refused. Petitioner then lifted his shirt to reveal a revolver in the waistband, and he again demanded the car keys. Santa Cruz again refused and asked, "What are you going to do, you going

1  to shoot me?" Petitioner shot Santa Cruz. Ex. 25A, at 23-25 (#18).[1]  Petitioner did not take the car
2  keys.  He and Carrillo drove from the parking lot immediately after the shooting.
3        Santa Cruz survived.  The bullet hit Santa Cruz in the left hip.  The bullet traveled through
4  his body and reached, but did not exit, his right thigh.  A physician's assistant who treated Santa
5  Cruz testified that she was surprised that the bullet did not the intestines, major arteries, or other
6  major organs. Ex. 26, at 5-6 (#18).
7        In ground 1(1), petitioner argues that one of the instructions defining robbery created an
8  improper presumption that allowed the prosecution to convict petitioner of attempted robbery
9  without proving all the elements.  The information charged petitioner with pointing a firearm at
10  Santa Cruz and demanding the his keys.
11        Jury instruction 9 stated:

> Robbery is the unlawful taking of personal property from the person of another, or in her presence, against her will, by means of force or violence or fear of injury, immediate or future, to her person or property.  Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial.  Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
>
> The value of property or money taken is not an an element of the crime of Robbery, and it is only necessary that the State prove the taking of some property or money.

Ex. 27, at 11 (#18).  Jury instruction 10 stated:

> It is unnecessary to prove both violence and intimidation.  If the fact be attended with circumstances of threatening word or gesture as in common experience and is likely to create an apprehension of danger and induce a man to part with his property for the safety of his person, it is robbery.  <u>It is not necessary to prove actual fear, as the law will presume it in such a case.</u>

<u>Id.</u>, at 12 (#18) (emphasis added).  "[C]ourts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if

---

[1] The trial transcript is a rough draft, with four pages of transcript on one sheet.  The court will cite to the trial transcript by using the page numbers generated by the computer docketing system at the top right of each page.

-4-

the State proves certain predicate facts." Carella v. California, 491 U.S. 263, 265 (1989). On this issue, the Nevada Supreme Court held:

> Aquino claims that the district court abused its discretion when it gave jury instruction number 10, which informed the jury that there was a mandatory presumption of fear as to attempted robbery.
>
> "[T]he State must prove every element of a crime . . . ." Batin v. State, 118 Nev. 61, 64, 38 P.3d 880, 883 (2002). Therefore, a jury instruction that creates a conclusive presumption that conflicts with the presumption of innocence and "invade[s]" the fact-finder's function, or shifts the burden of proof to the defendant, violates the defendant's right to due process. Sandstrom v. Montana, 442 U.S. 510, 521-24 (1979). Pursuant to NRS 200.380, robbery is:
>
>> the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery.
>
> Accordingly, to prove that a defendant committed robbery, the State need not prove that the defendant took the victim's property by means of fear. Rather, the State can alternatively carry its burden of proof by showing that the defendant took the victim's property by means of force or violence. NRS 200.380. As explained in State v. Luhano:
>
>> It is unnecessary to prove both violence and intimidation. . . . If the fact be attended with circumstances of terror, such threatening word or gesture as in common experience and is likely to create an apprehension of danger and induce a man to part with his property for the safety of his person, it is robbery. It is not necessary to prove actual fear, as the law will presume it in such a case.
>
> 31 Nev. 278, 284, 102 P.2d 260, 262 (1909) (internal quotations omitted).
>
> Jury instruction number 10 instructed the jury in accord with the law as set forth in Luhano. Aquino did not object to the instruction. Accordingly, we review for plain error and conclude that Aquino was not prejudiced by the jury instruction. See Green, 119 Nev. at 545, 80 P.3d at 95. Contrary to Aquino's assertion, the jury instruction did not create an impermissible presumption. Instead, the instruction explains that the jury could find Aquino guilty of attempted robbery even if it did not find that Santa Cruz had actually been fearful. Because this is consistent with NRS 200.380, we conclude that the instruction was an accurate explanation of the law. See Cortinas, 124 Nev. at ___, 195 P.3d at 319. Therefore, Aquino was not prejudiced and his challenge to this jury instruction fails.

Ex. 48, at 4-6 (#19). Although the emphasized portion of instruction 10 uses the word "presumed," the context of the instruction must be considered. The preceding sentence instructed the jury to determine whether the circumstances included a threatening word or gesture that would be likely to cause someone to hand over property for the sake of his safety. Reading those two sentences together, the Nevada Supreme Court reasonably could conclude that the instruction told the jury that they could infer fear from those circumstances even though the instruction used the word "presumed." Ground 1(1) is without merit.

As a separate reason for denying ground 1(1), this court's review of the case shows that even if the instruction was erroneous, it did not have a substantial and injurious effect upon the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). First, the prosecution did prove fear. Santa Cruz testified that when he noticed the other car following him, he exited the freeway, then drove to Little Darlings, then tried to go inside, to get away from petitioner and Carrillo. He even testified that when he saw only one person in the other car in the parking lot, meaning that the other person had exited the car and was unseen, he felt threatened. Ex. 25A, at 24 (#18). The jury easily could have found that Santa Cruz was in fear for his life or safety. Second, the prosecution could prove that petitioner used violence on Santa Cruz, an alternative element to robbery, because petitioner shot Santa Cruz.

Ground 2 is a claim that trial counsel provided ineffective assistance because he did not object to jury instruction 10, quoted above. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 562 U.S. at 105. Petitioner raised this claim in his state habeas corpus petition, and he appealed the denial of that petition. The Nevada Supreme Court did not rule expressly upon this claim. Nonetheless, the court presumes that the Nevada Supreme Court rejected this ground on its merits. See Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013). The Nevada Supreme Court

reasonably could have determined that petitioner suffered no prejudice, even if counsel should have objected to the use of the term "presumed," because of its ruling on direct appeal that the instruction was an accurate statement of the law and did not create a mandatory presumption of guilt. The court discussed that ruling above in ground 1(1). Petitioner also argues that the instruction is taken from the text of the robbery statute in effect 100 years ago. Petitioner does not explain what difference that makes. Even if the text in the instruction is different from the text of the current statute, the elements of the crime of robbery are the same. Finally, petitioner argues that the text of Luhano, from which jury instruction 10 takes its language, is an appellate standard. It is not. The text defined what it would take for the prosecution to prove that a person committed robbery, or attempted robbery, as in petitioner's case. Ground 2 is without merit.

Ground 3 is a claim that the prosecution and the pre-sentence investigation report misrepresented Santa Cruz's character, because Santa Cruz actually did have a criminal history. A sentence based upon materially false information violates due process. Townsend v. Burke, 334 U.S. 736, 741 (1948). A sentence not based upon materially false information does not violate due process. See Roberts v. United States, 445 U.S. 552, 556-57 (1980). The Nevada Supreme Court held:

> Aquino claims that the district court relied on false information when sentencing him because the State fallaciously represented Santa Cruz's character. Specifically, Aquino claims that the State and the Division of Parole and Probation failed to inform the district court that Santa Cruz had been arrested for trafficking in a controlled substance and possession of a firearm shortly after the incident in question.
>
> We have consistently afforded the district court wide discretion in its sentencing decision. . . . "A sentencing court is privileged to consider facts and circumstances that would clearly not be admissible at trial." . . . We will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." . . . However, if the district court relies on false information during sentencing, then the defendant's due process rights are violated. . . .
>
> Here, the State represented during the sentencing that Santa Cruz was a working-class man whose life had been ruined when Aquino shot him. The State asserted that Santa Cruz could no longer maintain employment as a construction worker and was losing his house. Further, the Division of Parole and Probation's presentence investigation report did not include information on Santa Cruz, stating only that it had been unable to contact him.
>
> Aquino did not formally object to the State's representations. However, Aquino did inform the district court that Santa Cruz was arrested for trafficking in a controlled substance and

-7-

> possession of a firearm by a prohibited person at some point after the pertinent incident occurred.
>
> Because Aquino failed to object below to the State's representation of Santa Cruz, we conduct a plain error review as to whether the district court violated Aquino's due process rights by relying on false information during sentencing. . . . We conclude that plain error did not occur. When sentencing Aquino, the district court was aware of Santa Cruz's arrest because Aquino informed the district court of that fact. Moreover, the district court did not base its sentence on the State's representation of Aquino's character. Rather, when sentencing Aquino, it focused on Aquino shooting Santa Cruz for his car and stated that it was only by chance that Aquino did not kill Santa Cruz. Therefore, because the district court knew about Santa Cruz's arrest and did not base Aquino's sentence on Santa Cruz's character, Aquino was not prejudiced because the district court did not rely on false information at sentencing.

Ex. 48, at 12-14 (#19) (citations omitted). The defense counsel did point out to the court that the reason why Santa Cruz was having difficulty finding work is because he was arrested for trafficking in a controlled substance and for possession of a firearm by a prohibited person. Ex. 29, at 5 (#18). The trial court made clear that it was sentencing petitioner based upon his willingness to shoot someone over a set of wheels, and also because by sheer luck the bullet did not hit anything major in Santa Cruz's body. Ex. 29, at 7 (#18). The Nevada Supreme Court's holding is a reasonable application of <u>Townsend</u> and <u>Roberts</u>. Ground 3 is without merit.

Ground 4 contains two claims that the evidence was insufficient to support the verdicts. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 309 (1979) (citing <u>In re Winship</u>, 397 U.S. 358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Id.</u> at 324 n.16.

First, petitioner argues that the evidence that he was the shooter was insufficient. On this issue, the Nevada Supreme Court held:

> Aquino first claims that the State failed to prove that he was the individual who shot Santa Cruz. Specifically, Aquino argues that Santa Cruz described the shooter as wearing a gray sweatshirt, but he was arrested wearing a striped short. Further, Aquino argues that the getaway car found by the police was a Mazda, as opposed to a Toyota as described by the dispatcher.

> We conclude that the evidence supports the jury's finding that Aquino was the shooter. Santa Cruz identified Aquino in a line-up the day after the incident and further identified Aquino as the shooter in a surveillance video taken in the Little Darlings' parking lot. Officer Ray [Allen] Horsley, a Las Vegas Metropolitan police officer who was part of the helicopter air support the night of the shooting, testified that while Aquino was wearing a dark top while in the getaway car, he was in a light top with stripes when he was running down the street prior to his arrest. Officer Horsley also testified that the Mazda he spotted from the helicopter was similar in shape to the originally described Toyota and that both makes have similarly shaped round symbols. Cynthia Vachon, a trace evidence examiner, testified that she detected trace amounts of gunshot residue on Aquino's right hand that was consistent with firing a weapon, but found no gunshot residue on Carrillo's hands. Officer Ulysses Valencia testified that after Aquino was read his Miranda rights, and he voluntarily waived them, he stated that he might have shot the victim at the Little Darlings bookstore and that the gun might be in the bookstore or in the car. We conclude that this evidence was sufficient for a rational juror to conclude that Aquino was the shooter.

Ex. 48, at 8-9 (#19). Petitioner's argument focuses on the color and type of shirt that the shooter was wearing, to the exclusion of all the other direct and circumstantial evidence against him. However, Officer Horsley spotted the car fleeing Little Darlings almost immediately, because his helicopter was in the air a short distance to the south at the time. Ex. 25B, at 7-8 (#18). Officer Horsley watched the car and its occupants during the subsequent chase until the occupants were arrested. There was no time for petitioner and Carrillo to change places in the car while they were fleeing the helicopter. Based upon the testimony, a rational juror could easily conclude petitioner simply removed the sweatshirt while he was in the car. Petitioner's argument also ignores the gunshot residue found on his hand, the lack of gunshot residue found on Carrillo's hands, and his own statements to the police after he was arrested. All that evidence would only reinforce the conclusion that petitioner was the shooter. The Nevada Supreme Court reasonably applied Jackson in this part of ground 4.

Second, petitioner claims that evidence was insufficient to establish the intent to kill needed to prove attempted murder. On this issue, the Nevada Supreme Court held:

> Aquino next asserts that the State presented insufficient evidence to support his conviction of attempted murder. Aquino argues that to be convicted of attempted murder, there must be evidence that the injury to the victim was to a vital part of the body, making it likely to lead to death. Because the bullet did not injury any major organ, Aquino argues that the State only presented evidence sufficient to support a battery conviction.
>
> In making this argument, Aquino relies on Graves v. State, 84 Nev. 262, 266, 439 P.2d 476, 478 (1968), in which we stated that "[t]here must be evidence that the wounds and resulting injury to the victim is to such a vital part of the human body, that it could lead to death, in order to support the charge of attempt to commit murder in the first degree." In [Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988)], this court rejected the notion that there are

> degrees of attempted murder, concluding instead that the only element that the State must show is a specific intent to kill. 104 Nev. at 740-41, 766 P.2d at 273. Therefore, Aquino's argument that the State must prove Santa Cruz suffered an injury to a vital organ is without merit.
>
> Thus, we reiterate that "[a]ttempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill." Keys, 104 Nev. at 740, 766 P.2d at 273. Pursuant to NRS 193.200, intent "is manifested by the circumstances connected with the perpetration of the offense." Accordingly, this court has held that "'intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime.'" . . . "Further, the jury may infer intent to kill from the manner of the defendant's use of a deadly weapon." . . .
>
> The State presented sufficient evidence at trial to prove that Aquino committed attempted murder when he shot Santa Cruz. Santa Cruz testified that he parked his car at the Little Darlings bookstore after Aquino and Carrillo followed him off the freeway. Santa Cruz testified that when he exited his car, Aquino got out of his car and demanded his car keys. Santa Cruz refused and Aquino showed him the gun he was carrying in his waistband. Aquino again demanded Santa Cruz's car keys. Santa Cruz refused and asked Aquino if he was going to shoot him. Santa Cruz began walking towards the bookstore, and Aquino shot him in the leg.
>
> At trial, Detective James Fink testified about gun use. He testified that the most important rule of gun safety is: "Never point your gun at anything you're not willing to destroy." Detective Fink further testified that even when aiming a gun at the center of a person, as police are trained to aim, a shooter might miss if he was under stress.
>
> We conclude that, when coupled with Detective Fink's testimony, Santa Cruz's testimony was sufficient to prove that Aquino shot him with the intent to kill. Aquino shot Santa Cruz once, in the leg, after mild provocation. When viewed in the light most favorable to the State, we conclude that a rational juror could conclude that, based on Detective Fink's testimony, Aquino was attempting to shoot Santa Cruz in the middle of his body, but missed because he was under stress. While not overwhelming evidence, it is the jury's position to determine credibility of the evidence, . . . and we, therefore, conclude that there was sufficient evidence to support the jury's attempted murder verdict.

Ex. 48, at 9-11 (#19) (some citations omitted). As the Nevada Supreme Court noted, it has receded from the notion that an injury must be sufficiently dangerous to for the crime to qualify as attempted murder, and it held that the only element that must be proven is the specific intent to kill. As the Nevada Supreme Court noted, determinations of credibility are left to the jury. Although petitioner might not have received the same training in firearms that Detective Fink received, petitioner did not need that training to know that the middle of the body contains vital organs. If the jury believed Santa Cruz's testimony, then they had sufficient circumstances to conclude that petitioner had an intent to kill. The Nevada Supreme Court reasonably applied Jackson, and ground 4 is without merit.

-10-

In ground 7, petitioner claims a violation of his constitutional rights when the jury was shown a picture of him in handcuffs. The Nevada Supreme Court held:

> While Aquino concedes that he did not object to the State's introduction at trial of photographs of him in handcuffs, he argues that the district court committed plain error when it permitted the State to introduce them at trial. Aquino claims that the photographs were more prejudicial than probative and destroyed his presumption of innocence at trial. We disagree. . . .
>
> Here, the State introduced photographs of Aquino that were taken when he was handcuffed during his arrest. Aquino did not object and we conclude that plain error did not occur. A defendant has the right to appear before the jury "clad in the apparel of an innocent person." Grooms v. State, 96 Nev. 142, 144, 605 P.2d 1145, 1146 (1980) (concluding that it was harmless error for the jury panel to view the defendant in handcuffs and without shoes because the district court ensured that the jury had not been influenced by the error). However, in this case, the jury did not see Aquino wearing handcuffs in the courtroom. Rather, the jury saw pictures of him taken at the time of his arrest, which were introduced at trial only to accomplish identification. Because the jury was aware that Aquino had been arrested, the photographs did not inform the jury of a fact that it did not already know. Therefore, Aquino was not prejudiced by the jury viewing photographs of him wearing handcuffs.

Ex. 48, at 2-4 (#19) (footnote and citations omitted). The court agrees with respondents. The Nevada Supreme Court identified the principle of federal law that a criminal defendant may be visibly shackled in the guilt phase of a trial only in cases of special need. The most recent decision of the Supreme Court of the United States to repeat this principle is Deck v. Missouri, 544 U.S. 622 (2007). However, the Supreme Court has never clearly established that the jury may not be shown photographs of a defendant in handcuffs. Consequently, the Nevada Supreme Court's decision in this case cannot be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See Carey v. Musladin, 549 U.S. 70, 76-77 (2006). Ground 7 is without merit.

In ground 8, petitioner claims that trial counsel provided ineffective assistance because counsel did not investigate the gunshot residue found on petitioner's hands. On this issue, the Nevada Supreme Court held:

> Appellant next claimed that he received ineffective assistance of trial and appellate counsel for their respective failures to investigate trace physical evidence found on appellant's hands. Appellant failed to support these claims with specific facts that, if true, would have entitled him to relief. Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (holding that "bare" or "naked" claims are insufficient to grant relief). We therefore conclude the district court did not err in denying these claims.

Ex. 87, at 2 (#20).  A claim of ineffective assistance of counsel requires petitioner to allege facts showing that counsel performed deficiently and that petitioner was prejudiced.  Strickland, 466 U.S. at 688, 694.  In the state habeas corpus petition, and in the current federal habeas corpus petition, petitioner did not allege what counsel would have learned if counsel had investigated the gunshot residue found on petitioner's hands.  Ex. 56, at 8-8A (#19).  Petitioner thus failed to meet the standards of Strickland, and the Nevada Supreme Court's decision was a reasonable application of Strickland.  Ground 8 is without merit.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds.  We hold as follows:  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th Cir. 2000).  The court already has determined that it will not issue a certificate of appealability for the previously dismissed grounds 1(2), 5, and 6.  The court now determines that none of the remaining grounds meet the standard for a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#5) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED:  August 20, 2015.

_____
JAMES C. MAHAN
United States District Judge